AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means        ❏ Original        ❏ Duplicate Original

CLERK'S OFFICE
A TRUE COPY
Sep 17, 2024
s/ vge
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with IP address<br>██████████ that is stored at premises<br>controlled by Baxet Group, Inc. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.24-914M(NJ)

Matter No. 2018R00365

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:        Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before October 1, 2024 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Nancy Joseph_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 9/17/2024 @ 11:30 a.m. _____

*(signature)* Nancy Joseph
*Judge's signature*

City and state:        Milwaukee, WI _____

U.S. Magistrate Judge Nancy Joseph
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                               *Printed name and title*

# ATTACHMENT A

## Property to Be Searched

The property to be searched consists of all records, data, and information currently stored at any premises owned, maintained, controlled, or operated by, or otherwise in the possession, custody, or control of Baxet Group, Inc., located at 2093 Philadelphia Pike #6009, Claymont, Delaware, associated with the Internet Protocol Address ▮▮▮▮▮▮ and domain name ▮▮▮▮▮▮▮▮

1

**ATTACHMENT B**

**Particular Things to be Seized**

**I.     Information to be disclosed by Baxet Group, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Baxet Group, Inc., including any messages, records, files, logs, or information that have been deleted but are still available to Baxet Group, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Baxet Group, Inc. is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.     The contents of all messages associated with the account, including stored or preserved copies of messages sent to and from the account (including all draft messages and deleted messages), the source and destination addresses associated with each message, the date and time at which each message was sent, the size and length of each message, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the messages, and all attachments;

1

c. The contents of all files and other records stored on the server, including but not limited to all backups, emails, messages, chat logs, web pages, database files, memory, netflow, and authentication credentials.

d. All activity, connection, and transactional logs for the account;

e. All records and information regarding locations where the account was accessed;

f. All records pertaining to the types of service used;

g. All records pertaining to communications between Baxet Group, Inc. and any person regarding the account, including contacts with support services and records of actions taken; and

h. All files, keys, or other information necessary to decrypt any data produced in an encrypted form.

i. All records or other information pertaining to that account or identifier, including all files, databases, and database records stored by Baxet Group, Inc. in relation to that account or identifier;

j. All records pertaining to the types of service utilized by the user,

k. All records pertaining to communications between Baxet Group, Inc. and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1029(a)(2) (trafficking access devices), 1030(a)(2) (illegally accessing a protected computer), 1030(a)(5) (illegally damaging a protected computer), 1956 (money laundering), 1957 (unlawful financial transactions), and conspiracies to violate

2

such laws relating to Genesis Market and its past or present infrastructure, or any person associated with Genesis Market and its past or present infrastructure, including operators, developers, administrators, technicians, marketers, customers, or associates, since March 1, 2018, including:

1. Documents, files, databases, and database records stored by Baxet Group, Inc. on behalf of the subscriber or user operating any server or IP address described in Attachment A, including:

a. Programming code used to serve or process requests made via web browsers;

b. HTML, CSS, JavaScript, image files, executable code, configuration files, or other files;

c. HTTP request and error logs;

d. SSH, FTP, or Telnet logs showing connections related to the server or IP address, and any other transactional information, including records of session times and durations, log files, dates and times of connecting, methods of connecting, and ports;

e. MySQL, PostgreSQL, or other databases related to the server or IP address;

f. messaging accounts and the contents thereof, associated with the account; and,

g. The contents of all files and other records stored on the server, including but not limited to all backups and database files;

h. Netflow logs;

i. Virtual memory to include virtual RAM and swap files.

3

2. To the extent not described in Paragraph 1, above, all records documenting, logging, evidencing, or relating to access to any server or IP address described in Attachment A.

3. To the extent not described in Paragraph 1, above, all records documenting, logging, evidencing, or relating to the administration or maintenance of any server or IP address described in Attachment A.

4. All customer or subscriber information related to the accounts established to host any server or IP address described in Attachment A, to include:

   a. Names, physical addresses, telephone numbers and other identifiers, email addresses, and business information;

   b. Length of service (including start date), types of service utilized, means and source of payment for services (including any credit card or back account number), and billing and payment information;

   c. If a domain name was registered on behalf of the subscriber, the date that the domain was registered, the domain name, the registrant information, administrative contact information, the technical contact information and billing contact used to register the domain and the method of payment tendered to secure and register the Internet domain name.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support

4

staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Information associated with IP address ███████
that is stored at premises controlled by Baxet Group,
Inc.

)
)
)
)
)
)
)

Case No. 24-914M(NJ)

CLERK'S OFFICE
A TRUE COPY
Sep 17, 2024
s/ vge
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1029 | Access device fraud |
| 18 USC 1030 | Computer fraud |
| 18 USC 1956, 1957 | Money laundering and unlawful financial transactions |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the a███████

████████████

_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____Telephone_____ *(specify reliable electronic means).*

Date: 9/17/2024 _____

_____
*Judge's signature*

City and state: Milwaukee, WI

U.S. Magistrate Judge Nancy Joseph
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, ██████ being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with certain account(s) that is stored at premises owned, maintained, controlled, or operated by Baxet Group, Inc. ("Baxet Group"), an electronic communications service/remote computing service provider located at 2093 Philadelphia Pike #6009, Claymont, Delaware, 19703. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Baxet Group to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.      ███████████████████████████████████████████

1

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and sources. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1029(a)(2) (trafficking access devices), 1030(a)(2) (illegally accessing a protected computer), 1030(a)(5) (illegally damaging a protected computer), 1956 (money laundering), 1957 (unlawful financial transactions), and conspiracies to violate such laws have been committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

### JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

### PROBABLE CAUSE

6.      Since approximately August 2018, the FBI has been investigating an illicit online marketplace named Genesis Market. In April 2023, the FBI took actions against Genesis Market infrastructure, administrators, and users, severely hampering the market, and by August 2023, Genesis Market was no longer online. Nonetheless, the FBI continues to investigate the Genesis Market administrators, infrastructure providers, and users for violations of federal criminal law as discussed herein.

7. Genesis Market was a private marketplace that was primarily hosted at the Internet domain "genesis.market". Genesis Market's operators compiled stolen data (*e.g.*, computer and mobile device identifiers, email addresses, usernames, and passwords) from malware-infected computers around the globe and packaged[1] it for sale on the market.[2] The investigation revealed that Genesis Market was accessible and selling these packages since at least March 2018.

8. These packages generally allowed a criminal actor to masquerade as a victim and allowed the criminal actor to trick a third-party company's anti-fraud detection system into granting the criminal actor access to the application or website. As a result, Genesis Market was one of the most prolific initial access brokers (IABs)[3] in the cybercrime space. In general, IABs attract criminals, such as ransomware actors, looking to expedite infiltration into, and lateral movement within, a targeted system. Speeding up those steps reduces the time required to attack a victim network and minimizes detection by software installed to protect networks against malicious intrusions.

9. As of March 2023, there were approximately 460,000 packages listed for sale on Genesis Market. Each package represented a single, compromised computer or device.

---

[1] Genesis Market referred to these packages of stolen data as "bots" on their site; however, typically, an Internet bot refers to a piece of software that runs automated tasks over the Internet. Since Genesis Market's use of the word "bot" strayed from the normal meaning, the term "package" is used throughout this request.

[2] Malware, or malicious software, is any piece of software that is written to damage and/or steal data from an Internet connected device. Viruses, trojans, spyware, and ransomware are all different types of malware.

[3] IABs sell access to compromised networks so that cybercriminals do not need to spend time finding compromised systems. Instead, those cybercriminals can use IABs as a shortcut and deploy their own malware immediately after they have victim information from the IABs.

3

According to Genesis Market's website, the packages were located across North America (including in the Eastern District of Wisconsin), Europe, South America, and parts of Asia.

10. From approximately 2018 through mid-2023, the FBI observed that the packages of stolen data were generally searchable based on areas of interest (*e.g.*, banking information, social media accounts, etc.), country of origin, price, and the date of infection (*i.e.*, the date the victim device was infected with malware). The prices of the packages varied and depended, primarily, on three factors: (1) the number of online accounts ("resources") associated with the package (*e.g.*, accounts with legitimate credentials for platforms like Amazon, Netflix, Gmail, etc., are more valuable); (2) how recently the package was compromised; and (3) whether there is a "fingerprint" associated with the package. A fingerprint is a group of identifiers that third-party applications or websites use to identify a computer or device. These fingerprints allowed the applications or websites to confirm that the device is a trusted source. The FBI determined that in situations where a fingerprint is associated with a package, Genesis Market provided the purchaser with a proprietary plugin (*i.e.*, an Internet browser extension that provides additional functionality). This proprietary plugin amplified that purchaser's ability to control and access the package's data.

11. Over the course of the investigation, the FBI funded the purchase of approximately 115 packages on Genesis Market. The FBI reviewed the data from purchased packages and determined that Genesis Market worked as advertised: it was, in fact, collecting and selling victims' personal identifying information around the world. Of those packages purchased by the FBI, approximately 27 were stolen from computers located in Wisconsin, approximately seven of which were located in the Eastern District of Wisconsin. Agents showed victim computer owners in the Eastern District of Wisconsin the usernames and passwords that

4

the agents had obtained via the Genesis Market, and the victims confirmed that the usernames and passwords belonged to them and had been stolen.

12. On or about December 9, 2020, the FBI, with assistance from a foreign law enforcement partner, obtained a forensic image of the server hosting Genesis Market's backend (the "Genesis Backend Server #1"). Examination of that server revealed voluminous records associated with Genesis Market's operations. For example, the server contained, among other things, usernames; passwords; email accounts; Jabber[4] accounts; BTC addresses; user search history; user purchase history; user tickets and comments; and records of packages sold or displayed for sale on Genesis Market. The FBI reviewed this data and found (1) that as of on or about December 7, 2020, there were approximately 33,000 Genesis Market users and approximately 900,000 individual packages (or "bots") that had been listed for sale or sold on Genesis Market, and (2) that more than $4,000,000 dollars' worth of virtual currency had been deposited into Genesis Market.

13. Shortly after investigators obtained the forensic image of the Genesis Backend Server #1, Genesis Market went offline. The investigation further found that during this downtime, the administrators of Genesis Market changed their hosting infrastructure (i.e., leased new servers and associated the market with different IP address, among other things). Thereafter, the FBI continued to work to identify the infrastructure supporting Genesis Market, and in or around January 2022, determined that Genesis Market's new backend server was located outside of the United States. In or around May 2022, with assistance from another foreign law enforcement partner, the FBI obtained a forensic image of the server that was hosting the then-active Genesis Market backend server (the "Genesis Backend Server #2). Analysis of that

---

[4] Jabber is an online messaging platform.

forensic image revealed that it contained much of the same information as the Genesis Backend Server #1, as well as updated user data and other information. For example, the data from Genesis Backend Server #2 showed the following about Genesis Market's activities from approximately 2018 through on or about May 18, 2022: (a) There were approximately 59,000 individual user accounts on Genesis Market; (b) There were approximately 1.5 million individual packages (or "bots") that had been compromised and advertised for sale on Genesis Market; (c) there were approximately 80 million account access credentials made available for sale on Genesis Market; and (d) Genesis Market's users made more than $8 million dollars in virtual currency deposits to the market.

14.    In April 2023, the FBI, in partnership with other law enforcement agencies in several countries, seized several domains associated with Genesis Market. This action disrupted Genesis Market and caused it to cease operations on the traditional internet, however, for a time, Genesis Market continued operations on a darknet website.  Later in 2023, activity on online criminal forums suggested that Genesis Market's owners may have sold the site. The site is inactive as of the date of this filing. However, investigation into the administrators of Genesis Market, who are located overseas, continues.

15.    ████████████████████████████████

██████████████████████████████████ ████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

6

16. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████

17. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████

18. While Genesis Market appears to have ceased operations, as described above, ████████████████████████████████████████ Specifically, as of around

February 2024, the domain ████ was no longer active, but the same service was accessible at the domain ██████████ The FBI knows these services are the same based on information obtained from another U.S. law enforcement agency, which I consider to be reliable.



████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ Based on my training and experience, I know that online services can change their login domains while still maintaining the same backend database(s), and based on the information I have received, ████████████████████████ Further, in my conversations with that U.S. law enforcement agency, I understand that when registering an account on ██████ a user generally needs to provide subscriber information and possibly bank/financial information, which would presumably be stored in a backend database for ██████ ████████████ Further, based on my training and experience, I know that service providers usually retain such user information, as well as additional information like the IP addressed used to register or access the account. ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

19.   ████████████████████████████████████████████████████

████████████████████████████████████████████████

---

[5] A "WHOIS" search provides publicly available information as to which entity is responsible for a particular IP address or domain name. A WHOIS record for a particular IP address or domain name will list a range of IP addresses that that IP address falls within and the entity responsible for that IP address range and domain name. For example, a WHOIS record for the domain name XYZ.COM might list an IP

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

█████████

**Technical Information**

20.     Hosting companies, such as Baxet Group, maintain server computers connected to the Internet. A server is a computer that provides services to other computers. Customers may use those servers for various functions, depending on the services offered by the hosting company. Some hosting companies offer simple cloud storage, which allows users to store files, much like an external hard drive, and share or edit those files with other persons. Other hosting companies allow users to operate and host websites on the Internet. Other hosting companies enable users to operate a virtual private server ("VPS"), which allows the customer to run virtualized operating systems from their computer over the Internet. Each VPS runs on a physical server but has its own self-contained disk space, bandwidth, processor allocation, memory, and operating system. Multiple VPSes can run on one physical server. A hosting company can offer any combination of the above. Based on the investigation and my training and experience, I believe that the Target Server is likely a virtual server.

21.     Based on my training and experience, as well as conversations with other agents and individuals knowledgeable in the field, I know that virtual and physical servers can be used to do the following types of things, among others: host a proxy server that securely routes internet traffic to the true location or "backend" of an illicit marketplace; host malware that

---

address range of 123.45.67.0- 123.45.67.99 and list Company ABC as the responsible entity. In this example, Company ABC would be responsible for the domain name XYZ.COM and IP addresses 123.45.67.0- 123.45.67.99.

Case 2:24-mj-00914-NJ     Filed 05/13/26     Page 18 of 29     Document 8

infects victim machines upon accessing the virtual server; host cyber-criminal domains and markets that can be quickly stood up or torn down via scripting tools to evade law enforcement detection; and function as a communications channel for communications platforms.

22. Further, based on my training and experience, I know that providers usually ask their subscribers to provide certain personal identifying information when registering for an account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit or bank account number). Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access an account.

23. Additionally, virtual server providers are often able to capture the virtual memory, also known as virtual RAM, and virtual swap files associated with a virtual server. The virtual RAM and swap files are where decryption keys for the server are generally stored, and are the digital artifacts used to decrypt encrypted containers in virtual servers, such as a luks container.[6]

---

[6] "LUKS" stands for Linux Unified Key Setup and refers to an encryption standard.

10

The virtual RAM and swap files may be useful in trying to identify the backend IP addresses that may be stored in the virtual server via encryption.

24. Virtual and physical server providers often keep network logs, also known as netflow, of IP connections to and from the virtual server. These netflow logs are used to determine the amount of traffic that is associated with the virtual server, and many virtual server providers will charge a higher rate for virtual servers that produce or incur more internet traffic. These netflow logs can also be used to possibly identify IP connections to or from backend servers, which otherwise may be hidden via encrypted means, such as a luks container. These netflow logs, while not as accurate or precise as decrypting an encrypted container, may help law enforcement to identify backend IP addresses.

25. In some cases, account users will communicate directly with a provider about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

26. If the Target Server turns out to be a physical service rather than a virtual server, I know based on my training and experience that the providers of physical servers can typically remove the hard drive(s) from the server and capture a forensic image in response to legal process. A physical server may or may not have RAM associated to it as the server will not be "live" when it is being imaged offline. The data produced in this fashion will likely contain identifying forensic artifacts such as data on the server, communication to other servers, and how other servers may be formatted for ███████████████

11

27. The data stored in a hosting account can be deleted by the user and often is deleted or otherwise altered by users who are actively trying to conceal their activities from law enforcement. However, based on my training and experience, I know that computer files or remnants of such files—including those stored or used on a hosting account—can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. This is the case because when a person "deletes" a file on a computer, the data contained in the "deleted" file actually remains on the storage medium until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may still reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

28. Apart from user-generated files, computer storage media contain electronic evidence of how a hosting account has been used, what it has been used for, and who has used it. To give a few examples, this evidence can take the form of operating system configurations, data from operating system or application operation, file system data structures, RAM and virtual memory "swap" or paging files. For instance, along with RAM, virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Computer file systems can record information about the dates files were created and sequence in which they were created.

29. In summary, based on my training and experience in this context, I believe that the information associated with Target Server is likely to contain user-generated content such as electronically stored information (including the content of a hosting account), as well as

information generated by Baxet Group about its subscribers and their use of its services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if a subscriber provides Baxet Group with false information about identity, that false information often nevertheless provides clues to identity, location, or illicit activity.

30.     As explained herein, information stored in connection with an account or server may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense or, alternatively, to exclude the innocent from further suspicion. From my training and experience, a user's IP address logs, stored electronic communications, and other data retained by Baxet Group, can indicate who has used or controlled the account or server. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, contact information may indicate who used or controlled the account at a relevant time. The absence of malicious software on the server increases the likelihood that the account holder in fact controls the use of the server. Further, account activity can show how and when the account was accessed or used. For example, as described above, Baxet Group logs the IP addresses from which its subscribers access their accounts, along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of account access, use, and events relating to the crime under investigation. Last, stored electronic data may provide relevant

insight into the account subscriber's state of mind as it relates to the offense under investigation. For example, information within the account holder's servers may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

31.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Baxet Group to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

32.     Based on the forgoing, I request that the Court issue the proposed search warrant.

33.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

34.      The government will execute this warrant by serving the warrant on Baxet Group. Because the warrant will be served on Baxet Group, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

14

## ATTACHMENT A

### Property to Be Searched

The property to be searched consists of all records, data, and information currently stored at any premises owned, maintained, controlled, or operated by, or otherwise in the possession, custody, or control of Baxet Group, Inc., located at 2093 Philadelphia Pike #6009, Claymont, Delaware, associated with the Internet Protocol Address ██████████████████ ██████████.

1

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be disclosed by Baxet Group, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Baxet Group, Inc., including any messages, records, files, logs, or information that have been deleted but are still available to Baxet Group, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Baxet Group, Inc. is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      The contents of all messages associated with the account, including stored or preserved copies of messages sent to and from the account (including all draft messages and deleted messages), the source and destination addresses associated with each message, the date and time at which each message was sent, the size and length of each message, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the messages, and all attachments;

1

c.　　　The contents of all files and other records stored on the server, including but not limited to all backups, emails, messages, chat logs, web pages, database files, memory, netflow, and authentication credentials.

d.　　　All activity, connection, and transactional logs for the account;

e.　　　All records and information regarding locations where the account was accessed;

f.　　　All records pertaining to the types of service used;

g.　　　All records pertaining to communications between Baxet Group, Inc. and any person regarding the account, including contacts with support services and records of actions taken; and

h.　　　All files, keys, or other information necessary to decrypt any data produced in an encrypted form.

i.　　　All records or other information pertaining to that account or identifier, including all files, databases, and database records stored by Baxet Group, Inc. in relation to that account or identifier;

j.　　　All records pertaining to the types of service utilized by the user,

k.　　　All records pertaining to communications between Baxet Group, Inc. and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II.　　Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1029(a)(2) (trafficking access devices), 1030(a)(2) (illegally accessing a protected computer), 1030(a)(5) (illegally damaging a protected computer), 1956 (money laundering), 1957 (unlawful financial transactions), and conspiracies to violate

2

such laws relating to Genesis Market and its past or present infrastructure, or any person associated with Genesis Market and its past or present infrastructure, including operators, developers, administrators, technicians, marketers, customers, or associates, since March 1, 2018, including:

1.      Documents, files, databases, and database records stored by Baxet Group, Inc. on behalf of the subscriber or user operating any server or IP address described in Attachment A, including:

a.      Programming code used to serve or process requests made via web browsers;

b.      HTML, CSS, JavaScript, image files, executable code, configuration files, or other files;

c.      HTTP request and error logs;

d.      SSH, FTP, or Telnet logs showing connections related to the server or IP address, and any other transactional information, including records of session times and durations, log files, dates and times of connecting, methods of connecting, and ports;

e.      MySQL, PostgreSQL, or other databases related to the server or IP address;

f.      messaging accounts and the contents thereof, associated with the account; and,

g.      The contents of all files and other records stored on the server, including but not limited to all backups and database files;

h.      Netflow logs;

i.      Virtual memory to include virtual RAM and swap files.

3

2. To the extent not described in Paragraph 1, above, all records documenting, logging, evidencing, or relating to access to any server or IP address described in Attachment A.

3. To the extent not described in Paragraph 1, above, all records documenting, logging, evidencing, or relating to the administration or maintenance of any server or IP address described in Attachment A.

4. All customer or subscriber information related to the accounts established to host any server or IP address described in Attachment A, to include:

    a. Names, physical addresses, telephone numbers and other identifiers, email addresses, and business information;

    b. Length of service (including start date), types of service utilized, means and source of payment for services (including any credit card or back account number), and billing and payment information;

    c. If a domain name was registered on behalf of the subscriber, the date that the domain was registered, the domain name, the registrant information, administrative contact information, the technical contact information and billing contact used to register the domain and the method of payment tendered to secure and register the Internet domain name.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support

4

staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their

support staff for their independent review